# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Maria Ramirez-Cruz, | Case No. 15-cv-4514-ADM-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Chipotle Services, LLC, | |
| Defendant. | |

In this report and recommendation, the Court is asked to address Ms. Ramirez-Cruz's assertion, raised in two separate motions, that Chipotle and its attorneys improperly handled evidence relevant to this case and engaged in other conduct justifying sanctions. For the reasons set forth below, the Court recommends that both motions be denied.

## I.    OVERVIEW

This is an employment discrimination suit between Maria Ramirez-Cruz and Chipotle Services, LLC ("Chipotle"), which owns and operates a Chipotle Mexican Grill restaurant in Cottage Grove, Minnesota. Ms. Ramirez-Cruz worked at the Cottage Grove location between late August 2014 and mid-April 2015. Ms. Ramirez-Cruz alleges that Chipotle terminated her employment in violation of the Minnesota Human Rights Act in part because of her sex and in part because she was pregnant. She asserts that after Chipotle terminated her boyfriend's employment at the same store, Chipotle assumed she would not want to continue working there and removed her from the schedule for the 16th, 17th, and 18th of April 2015. [*See* Second Am. Compl. ¶¶ 5-15, ECF No. 26.]

Chipotle denies violating Ms. Ramirez-Cruz's rights. As part of its defense, Chipotle has asserted that Ms. Ramirez-Cruz was scheduled to work on April 16-18, 2015, but she failed to show up for her shifts.[1]

The primary dispute currently at issue surrounds production of various versions of Ms. Ramirez-Cruz's work schedule. Through the litigation, it has become apparent that the physical paper copy of the schedule posted in the Cottage Grove store for the week in question was destroyed. Chipotle has, belatedly and reluctantly, produced two types of electronically stored information relating to the weekly schedule. Ms. Ramirez-Cruz asked for production of schedules in her initial discovery requests, but Chipotle did not produce the electronically stored information until much later, maintaining that the inaccuracy of the information rendered it non-discoverable.

Ms. Ramirez-Cruz also raises a dispute about a "Development Journal," a document which Chipotle allegedly maintained during her employment at the Cottage Grove store. She asserts that the Development Journal was used to track her progress as an employee, and she believes it would show positive reviews of her performance.[2] Although she requested the Development Journal in discovery, Chipotle never

---

[1]    In its recently filed motion for summary judgment (and as counsel suggested at the hearing on the sanctions motions, its likely defense at trial), Chipotle focuses on Ms. Ramirez-Cruz's alleged failure, after April 16-18, 2015, to contact managers at the Cottage Grove store to get back on the schedule. [*See generally* ECF No. 95.] Counsel for Chipotle has disavowed its intention to rely on Ms. Ramirez-Cruz's failure to appear for scheduled shifts to defend the lawsuit, likely rendering the issue immaterial to the outcome of the case.

[2]    At the hearing on the sanctions motions, the parties disagreed whether Chipotle has asserted that Ms. Ramirez-Cruz cannot prevail on her discrimination claim because of job-performance problems. Chipotle does not seek judgment on that issue in its pending motion for summary judgment. Ms. Ramirez-Cruz seemed to acknowledge this has not been Chipotle's defense in one of her memoranda on the pending motions. [Pl.'s 2nd Mem. in Supp. of Pl.'s 2nd Mot. at 15 ("Chipotle has never used work performance as the reason she was terminated[.]"), ECF No. 71.]

produced it, asserting that it does not have a Development Journal for Ms. Ramirez-Cruz. Like the paper copy of the relevant weekly schedule, any Development Journal that may have existed is no longer available. Ms. Ramirez-Cruz seeks spoliation sanctions against Chipotle for failing to preserve this document.

Two separate motions for sanctions address these issues. [Pl.'s First Mot. for Sanctions ("Pl.'s 1st Mot."), ECF No. 43; Pl.'s Second Mot. for Sanctions ("Pl.'s 2nd Mot."), ECF No. 69.] Ms. Ramirez-Cruz seeks spoliation sanctions against Chipotle for the alleged failure to preserve the paper weekly schedule and the Development Journal, arguing for an adverse inference jury instruction, a ruling that certain matters are definitively established against Chipotle, a prohibition on Chipotle offering evidence to support or defend certain positions, or some combination of these case-related sanctions. [Pl.'s 1st Mot.] For the conduct involving the belated production of the electronically stored information, Ms. Ramirez-Cruz seeks sanctions against Chipotle's counsel under the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, or both. [Pl.'s 2nd Mot.]

The sanctions motions have been extensively briefed and are accompanied by a number of affidavits and exhibits. The Court held a hearing on these motions and other non-dispositive pretrial matters on April 13, 2017. At the hearing, counsel for the parties clarified some of the issues presented in the briefs and addressed the Court's questions concerning the legal and factual landscape.

For the reasons that follow, the Court concludes that Ms. Ramirez-Cruz is not entitled to any spoliation sanction relating to either the paper schedule or the Development Journal. The Court also concludes that, although Chipotle indefensibly delayed production of the electronically stored information concerning the weekly schedule, Ms. Ramirez-Cruz's counsel litigated that issue in an unreasonable manner. Therefore sanctions against counsel for Chipotle or defense counsel are not appropriate.

## II.    THE SPOLIATION MOTION

At the hearing, counsel for Ms. Ramirez-Cruz clarified that she seeks spoliation sanctions based on the allegedly improper destruction of: (1) a paper schedule for the week of April 12-18, 2015, which was printed out and used at Chipotle's Cottage Grove restaurant ("the paper schedule"); and (2) the Development Journal.[3] Because these documents, if they existed, were discarded before the litigation began pursuant to a document retention policy, and in the absence of any evidence that they were destroyed in an effort to hide the truth, the motion must be denied.

### A. Legal Standard

The authority to impose sanctions for spoliation of evidence arises from a federal court's inherent power. *See Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006-07 (8th Cir. 2012). The imposition of sanctions is within the district court's discretion. *See Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) (explaining that the imposition of sanctions is reviewed for abuse of discretion). "There must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence." *Stevenson*, 354 F.3d at 748; *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013) (same).

Although the Eighth Circuit case law in this arena has not led to a clearly stated framework for analysis, the patchwork of appellate and district court decisions establishes that three factors are relevant to a court's assessment of a motion for spoliation sanctions: (1) whether the destruction was done in bad faith or with the intention to hide the truth; (2) the timing of the destruction of evidence; and (3) what

---

[3]    At the hearing on the motion, counsel for Ms. Ramirez-Cruz acknowledged that the spoliation issues motion is not related to any alleged destruction of electronically stored information. Accordingly, the Court will not address the arguments directed at whether sanctions are appropriate under Federal Rule of Civil Procedure 37(e).

sort of sanction is at issue. Though these factors are plainly central to the analysis, either explicitly or implicitly, the proper order of their application remains less certain.

For example, some cases can be read to always require a finding of bad faith (*i.e.*, the intentional destruction indicating a desire to suppress the truth), regardless of the sanction to be imposed or the point at which the evidence is destroyed. *See Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (providing that a spoliation-of-evidence sanction requires a finding of intentional destruction indicating a desire to suppress the truth). However, the Eighth Circuit has also stated "[o]ur interpretation of Supreme Court authority concerning a court's inherent power to sanction counsels that a finding of bad faith is not always necessary to the court's exercise of its inherent power to impose sanctions." *Stevenson*, 354 F.3d at 745. Indeed, although it addressed a unique factual situation, the *Stevenson* decision upheld the district court's imposition of an adverse inference instruction as a sanction for "the ongoing destruction of records during litigation and discovery . . . even absent an explicit bad faith finding." *Id.* at 750.

Similarly, some decisions suggest that whether a finding of bad faith is required depends on the severity of the sanction requested, such as dismissal or an adverse inference instruction, and imply that the more serious the sanction at issue, the more likely a showing of bad faith is necessary. *See Morris v. Union Pacific R.R.*, 373 F.3d 896, 900-03 (8th Cir. 2004) (rejecting a negligence standard for prelitigation destruction of evidence and requiring a finding of intentional destruction prior to imposition of an adverse inference instruction); *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006) (finding that the sanction of dismissal of the plaintiff's suit required a finding of bad faith); *Stevenson*, 354 F.3d at 745-48 (clarifying the imposition of sanctions for prelitigation destruction of evidence requires a finding of intent to obstruct or suppress the truth); *but see Bakhtiari v. Lutz*, 507 F.3d 1132, 1134-36 (8th Cir. 2007) (not specifying the type of sanction requested and finding that the district court did not err in refusing to give any spoliation sanction for pre-lawsuit destruction of an email account); *Greyhound Lines, Inc. v. Wade*, 485 F.3d at 1035 (affirming district

court decision not to give a spoliation-of-evidence sanction where there was no showing of intentional destruction for the purpose of suppressing the truth); *Stepnes v. Ritschel*, No. 08-cv-5296 (ADM/JJK), Doc. No. 61 at 7 (D. Minn. Oct. 1, 2009) (Keyes, M.J.) (collecting cases).

*Greyhound Lines* represents the broadest statement of the rule that a finding of intentional destruction with a desire to suppress the truth is required before any sanction can be imposed for spoliation. 485 F.3d at 1035. However, there the court relied on a specific passage in *Stevenson* that addressed the propriety of imposing an adverse inference instruction for prelitigation destruction of documents. *Id.* (citing *Stevenson*, 354 F.3d at 746). The decision in *Greyhound Lines* also did not discuss or undermine the portion of *Stevenson* that specifically upheld the imposition of a spoliation sanction for the defendant's "ongoing destruction of records during litigation and discovery . . . even absent an explicit bad faith finding." *See Stevenson*, 354 F.3d at 749-50. The Eighth Circuit has since clarified that this portion of *Stevenson* remains good law. *Gallagher v. Magner*, 619 F.3d 823, 845 (8th Cir. 2010) ("To be sure, a district court does not abuse its discretion by imposing sanctions, even absent an explicit bad faith finding, where a party destroys specifically requested evidence after litigation has commenced."). Further, the Eighth Circuit has clarified that if "a court expressly finds . . . that there is no evidence of intentional destruction of evidence to suppress the truth, then the district court also acts within its discretionary limits by denying sanctions for spoliation of evidence." *Id.*

Finally, decisions within this District suggest that the timing of the destruction of evidence determines whether a bad faith finding is required. *See, e.g., E*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588-89 (D. Minn. 2005) (citing *Stevenson*, 354 F.3d at 747-48).

> If destruction of relevant information occurs before any litigation has begun, in order to justify sanctions, the requesting party must show that the destruction was the result of bad faith. . . .

> If, however, the destruction of evidence occurs after litigation is imminent or has begun, no bad faith need be shown by the moving party.

*Id.* These cases place a heavy emphasis on when the party's obligation to preserve evidence was triggered. *See, e.g., The Valspar Corp. v. Millennium Inorganic Chem., Inc.*, No. 13-cv-3214 (ADM/LIB), 2016 WL 6902459, at *4 (D. Minn. Jan. 20, 2016) (quoting *E\*Trade*, 230 F.R.D. at 588); *Ewald v. Royal Norwegian Embassy*, No. 11-cv-2116 (SRN/SER), 2014 WL 1309095, at *15 (D. Minn. Apr. 1, 2014) (same). These cases cannot, however, be read to authorize the imposition of an adverse inference instruction merely because evidence was destroyed prior to litigation when a party should have known that litigation was likely; the Eighth Circuit has explicitly held otherwise. *Morris*, 373 F.3d at 900-03; *Stevenson*, 354 F.3d at 745; *see also Hallmark Cards, Inc.*, 703 F.3d at 461 (prospectively holding that a district court must issue explicit findings of bad faith and prejudice prior to delivering an adverse inference instruction "in the usual case involving pre-litigation spoliation of evidence").

In sum, while the Court must certainly consider the timing of the destruction of evidence here, the intent behind that destruction, and the sanctions requested, the relationship between these factors in the analysis remains less clear. We need not resolve that question here, however. As explained below, even if a finding of bad faith is required for the imposition of *any* spoliation-of-evidence sanction for pre-litigation destruction of evidence, there is no basis for a bad faith finding on this record. And if, without a finding of bad faith, some lesser sanction can be imposed for pre-litigation destruction of evidence where the duty to preserve has been triggered, no such sanction would be authorized here because the duty to preserve had not been triggered prior to the destruction of the documents at issue.

## B. Destruction of the Documents and Chipotle's Retention Policy

There is no dispute that the paper schedule and the Development Journal were destroyed pursuant to Chipotle's retention policies. The paper schedule was destroyed at the end of the week of April 12-18, 2015; the weekly paper schedules are discarded

at the end of each week, once the shifts are completed. [*See* Decl. of Esther Smiley ("Smiley Decl.") ¶ 16 (explaining that the printed hard copy of the weekly schedule from MenuLink is discarded at the end of each week), ECF No. 91-2.] Pursuant to Chipotle's document retention policy, the Development Journal (if one ever existed for Ms. Ramirez-Cruz) would have been destroyed by the end of September 2015. [*See* Smiley Decl. ¶ 10 (explaining that under the applicable document retention policy, "Development Journals are kept for the current quarter and prior quarter").] Ms. Ramirez-Cruz does not dispute that both of the documents at issue in her spoliation motion were destroyed in the regular course of business by at least September 2015.

Because the documents at issue were destroyed pursuant to a routine document retention policy, a finding of bad faith would be required to impose the type of sanctions Ms. Ramirez-Cruz seeks. *See Stevenson*, 354 F.3d at 746-47. Ms. Ramirez-Cruz has not presented any evidence to suggest the documents were destroyed with the intent to obstruct or suppress the truth, and the Corut finds no hint of such a motive in the record. Admittedly, such intent is rarely demonstrated by direct evidence, *Morris*, 373 F.3d at 901, so Ms. Ramirez-Cruz argues that other factors prove that Chipotle destroyed evidence in bad faith. Her efforts are unpersuasive.

### C.    Alleged Duty to Preserve and Bad Faith

Ms. Ramirez-Cruz argues that Chipotle had a duty to preserve the paper schedule and the Development Journal before they were destroyed and suggests that the failure to keep the documents supports an inference that they were destroyed in bad faith.[4] First, she asserts that the documents should have been continuously

---

[4]    As conceded by her counsel at the hearing, Ms. Ramirez-Cruz did not inform Chipotle prior to filing this lawsuit that she intended to bring a claim. Nor did plaintiff's counsel send Chipotle a notice of Ms. Ramirez-Cruz's claim, submit a claim to the Equal Employment Opportunity Commission, or send Chipotle a pre-litigation demand letter. Instead, Chipotle first had actual notice of Ms. Ramirez-Cruz's claim that she was unlawfully terminated on December 2, 2015, when Chipotle's registered

*(footnote continued on following page)*

preserved because Chipotle is an "international company with over 2000 restaurants and has been sued many times for a variety of reasons." [Pl.'s 1st Mem. at 10.] Second, she states "as a major fast food chain, [Chipotle] should be familiar with industry problems regarding discrimination litigation," and should be particularly careful to retain documents when it terminates the employment of a pregnant woman. [*See id.*] Third, she appears to contend that issues involving the Development Journal and weekly schedules arose in two recent lawsuits (one in this District and another in the District Court for the District of Columbia), which should have put Chipotle on notice that it always needed to preserve the documents at issue in this case. [*See id.* at 10, 13-14.] Finally, Ms. Ramirez-Cruz argues that Chipotle's document retention policies contravene state and federal regulations governing retention of some employee records. [Pl.'s 1st Mem. at 11-12.] These arguments fail to show that Chipotle had a duty to preserve the documents prior to being served with the complaint or that Chipotle destroyed any evidence with the intent obstruct or suppress the truth.

### Mere possibility of litigation

Neither Chipotle's status as a large national company with many employees nor Ms. Ramirez-Cruz's status as a pregnant woman triggered a duty to preserve the paper schedule or Development Journal. That Chipotle has been involved in previous lawsuits proves only that it could be subject to the "ever-present possibility" of litigation, and "the duty to preserve relevant documents should require more than a mere possibility of litigation." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007). Similarly, the fact that Ms. Ramirez-Cruz was pregnant when she alleges she was terminated does not transform the theoretical possibility of litigation into an imminent prospect of litigation requiring preservation.

---

(*footnote continued from previous page*)
agent received service of the original Complaint. [*See* Notice of Removal at 1, ECF No. 1.]

Ms. Ramirez-Cruz points to no authority to support the proposition implicit in her argument that an employer should always anticipate litigation whenever it terminates the employment of an individual who is pregnant. The Eighth Circuit has held that the mere prospect of litigation is also insufficient to support a finding of bad faith. *Greyhound Lines*, 485 F.3d at 1035 ("The ultimate focus for imposing sanctions for spoliation is the intentional destruction of evidence indicating a desire to suppress the truth, not the prospect of litigation.").

### Stevenson v. v. Union Pac. R.R. Co.

Ms. Ramirez-Cruz next relies on the Eighth Circuit's decision in *Stevenson* to support her argument that a finding of bad faith is appropriate because Chipotle had a duty to preserve in this case. However, *Stevenson*, with its unique facts, "test[ed] the limits of what [qualifies] as a bad faith determination" where pre-suit destruction of relevant information pursuant to a retention policy is involved. *See* 354 F.3d at 747-48; [Pl.'s 1st Mem. at 10]. *Stevenson* involved a train accident and the defendant destroyed a voice tape before litigation commenced. The defendant's knowledge that the tapes were the only contemporaneous recording at the time of the accident, that the tapes would be important to litigation over an accident involving serious injury or death, and the defendant's effort to preserve other types of evidence (but not the tapes) combined to support an inference that the defendant intended to destroy the tapes to suppress the facts surrounding the accident. 354 F.3d at 747-48. Ms. Ramirez-Cruz points to nothing here that would similarly warrant a finding of bad faith. If *Stevenson* marks the outer reaches for a finding of bad faith destruction of evidence prior to litigation pursuant to a routine document retention policy, this case falls outside of that boundary.

### Garcia-Hernandez v. Chipotle

Ms. Ramirez-Cruz asserts that Chipotle should have retained the Development Journal because it was recently a defendant in another discrimination suit in the District of Columbia, was represented by the same counsel as in this case, and the

10

district court approved an adverse inference instruction due to the destruction of the Development Journal in that case. [Pl.'s 1st Mem. at 5-6, 7-8, 10 & n.3, 14-15, 16-17.][5] The plaintiff refers to *Garcia-Hernandez v. Chipotle*, 1:14-cv-00297 (D.D.C. Aug. 4, 2016), and a ruling by the trial judge at the charging conference in August 2016. [*See* Pl.'s Ex. 15, ECF No. 61.] However, even if a court's determination regarding spoliation in another case could trigger a nationwide duty to preserve, Ms. Ramirez-Cruz does not explain how that August 2016 district court decision possibly could have put Chipotle on notice by September or October of 2015 that it had a duty to preserve Ms. Ramirez-Cruz's Development Journal. The relevant question here is whether Chipotle was on notice before this lawsuit began that it would need to preserve documents because litigation with Ms. Ramirez-Cruz was imminent.[6] The circumstances of *Garcia-Hernandez* do nothing to establish that Chipotle's duty to preserve arose prior to the commencement of litigation in this case.

---

[5]    Ms. Ramirez-Cruz also refers the Court to a case from this district, *Sieden v. Chipotle Mexican Grill, Inc.*, No. 0:14-cv-00056, Doc. No. 1 (D. Minn. Jan. 6, 2014) (Notice of Removal), noting that information related to work schedules was introduced in that case. However, the fact that such information was available in other litigation has no bearing on when Chipotle had a duty to preserve information relevant to this case. Taken to its logical conclusion, Ms. Ramirez-Cruz's argument is that if information relating to one employee is preserved and introduced in litigation relating to that employee, an employer has a duty to preserve the same information for every employee because that information might be relevant in the future. Such a proposition is entirely without support.

[6]    There is no indication that the district court in *Garcia-Hernandez* engaged in any assessment of intent or bad faith, which may be due to a legal standard in the District of Columbia that allows spoliation sanctions for negligent destruction of evidence prior to litigation. *See Mazloum v. D.C. Metro Police Dep't*, 530 F. Supp. 2d 282, 292-93 (D.D.C. 2008) (explaining that an adverse inference instruction could be provided based on negligent destruction of documents prior to litigation); *More v. Snow*, 480 F. Supp. 2d 257, 275 (D.D.C. 2007) (same).

## Regulatory and Statutory Duty to Preserve

Ms. Ramirez-Cruz also argues that various laws and regulations create an ongoing duty to preserve the documents that were destroyed in this case. Although in briefing she only cited to the laws and regulations themselves to support this argument, following the hearing, counsel for the plaintiff identified via email two decisions in support of her cause. [Email from P. Fishman to Menendez, M.J. (Apr. 14, 2017, CST 13:15) (on file with the Court).] Counsel directed the Court's attention to *Favors v. Fisher*, 13 F.3d 1235 (8th Cir. 1994), and *EEOC v. Jacksonville Shipping*, 690 F. Supp. 995 (M.D. Fla. 1988). However, neither case establishes a pre-litigation duty to preserve nor helps demonstrate that Chipotle destroyed evidence to suppress the truth.

For two reasons, *Favors* does not support a spoliation sanction in this case. First, it dealt with a rebuttable presumption in a bench trial, a much different factual and legal landscape than the adverse inference jury instruction requested here. In *Favors*, following a bench trial, the Eighth Circuit affirmed the district court's conclusion that the plaintiff was not a victim of race discrimination. 13 F.3d at 1236-1237 (describing disposition, the relevant facts, and the nature of the bench trial). The employer asked each candidate, including the plaintiff, the same ten questions and had a copy of their answers, but destroyed those records. *Id.* at 1238. The district court found that this destruction violated an EEOC regulation that specifically required the preservation of tests taken by job applicants. *Id.* at 1238-39 (discussing violation of 29 C.F.R. § 1602.14). As a result, the district court applied a rebuttable presumption that the documents would have supported the plaintiff's position. Though this presumption—which Ms. Ramirez-Cruz implicitly analogizes to an adverse inference instruction—was not directly at issue on appeal, the Eight Circuit also did not criticize

it. *Id.* at 1239. However, because *Favors* did not involve an instruction to a jury at all, its applicability here is tangential, at best.[7]

Moreover, the *Favors* decision is out of step with recent jurisprudence. In discussing the presumption, the *Favors* court cited the Tenth Circuit's decision in *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1419 (10th Cir. 1987), the holding of which has been "implicitly overruled" by more recent Tenth Circuit cases that require a finding of bad faith to impose spoliation sanctions. *See EEOC .v Jetstream Ground Servs., Inc.*, 2016 WL 8201623, at *13 (D. Colo. Nov. 3, 2016) (finding that more recent binding case law in the Tenth Circuit requires a finding of bad faith for an adverse inference instruction). *Favors* likewise did not apply such a rule. Yet more recently, the Eighth Circuit clarified that the imposition of an adverse inference instruction as a sanction requires a finding of bad faith where documents are destroyed prior to litigation pursuant to a routine retention policy. *Stevenson*, 354 F.3d at 747. The Court cannot ignore this recent binding authority. Ms. Ramirez-Cruz has made no showing that even if the destruction of the paper schedule or the Development Journal violated a regulation, that demonstrates an intent to obstruct or suppress the truth.

---

[7]    The Eighth Circuit's discussion of adverse inference instructions in *Morris v. Union Pac. R.R.*, 373 F.3d 896, 900 (8th Cir. 2004), recognizes the categorically different effect worked by a trial judge's instruction to jurors hearing a case:

> An adverse inference instruction is a powerful tool in a jury trial. When giving such an instruction, a federal judge brands one party as a bad actor, guilty of destroying evidence that it should have retained for use by the jury. It necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in the unknown contents of an erased audiotape. As the district court in this case put it colloquially, "it's like cow crap; the more you step in it, the more it stinks."

*Id.* at 900-01.

*Jacksonville Shipping* is also easily distinguished because the claimant there put the employer on actual notice that litigation was imminent prior to the destruction of the records. And the defendant admittedly destroyed records "approximately four or five years following the filing of . . . charges" with the EEOC. 690 F. Supp. at 997. The EEOC regulation at issue required preservation of personnel records during the pendency of a discrimination complaint until a final disposition of the charge is made. *Id.* The employer's duty to preserve arose directly from the filing of the charge with the EEOC. *Jacksonville Shipping* is therefore inapplicable here, where no such complaint was made with the agency.

### D. Conclusion

The Court finds that the weekly paper schedule and any Development Journal were destroyed pursuant to Chipotle's routine document retention policies well before December 2, 2015, and no duty to preserve those items arose prior to that date. Further, the Court finds that the pre-litigation destruction of these documents was not in bad faith. Ms. Ramirez-Cruz has asked the Court to enter default judgment in her favor. In the alternative she asked the Court to impose an adverse inference, to take certain matters as decided against Chipotle, or to prevent Chipotle from offering evidence on certain issues. Because there was no bad faith destruction of evidence, she is not entitled to such a severe sanction. Even if a lesser sanction were permitted in the absence of a bad faith finding, she has failed to demonstrate any such sanction is warranted. As a result of these findings and conclusions, the Court need not reach the issue whether the absence of the evidence caused prejudice to Ms. Ramirez-Cruz. Accordingly, the Court recommends that Ms. Ramirez-Cruz's motion for spoliation sanctions be denied.

## III.    MOTION FOR DISCOVERY SANCTIONS

The Court now turns to Ms. Ramirez-Cruz's motion seeking sanctions against Chipotle and its counsel for discovery conduct. She asserts that Chipotle failed to comply with its disclosure and discovery obligations and made misrepresentations concerning information in Chipotle's possession. [Pl.'s 2nd Mot.] Although, as

explained above, the paper schedule at issue was destroyed sometime around April 18, 2015, Chipotle continued to possess electronically stored information from the MenuLink program that was used to create that schedule (hereafter "MenuLink Data"). Chipotle did not agree to produce the MenuLink Data until February 10, 2017.

The significant effort expended here could have easily been avoided, and both sides share the blame. Chipotle's responses to written discovery failed to illuminate that the MenuLink Data even existed. This approach to discovery was indefensible. However, when plaintiff's counsel ultimately learned that Chipotle had the information, and Chipotle agreed to produce it and make itself available for additional discovery on the relevant issue, rather than take a reasonable approach, plaintiff's counsel severely overplayed his hand.

### A. Background

Ms. Ramirez-Cruz first served written discovery on Chipotle on July 26, 2016, in which she asked Chipotle to produce employee work schedules. [*See* ECF No. 70, Ex. 4; Def.'s Resp. to Pl.'s 2d Mot. at 6, ECF No. 90 (discussing date of service of written discovery).] Below are the relevant request and Chipotle's response:

> 10. Please attach copies of all employee work schedules at the Cottage Grove Chipotle location between January 1, 2015 and January 1, 2016, including the dates each schedule was finalized.
>
> RESPONSE: Defendant incorporates its general objections as if fully stated herein, and further objects to the request as overly broad in scope and time, unduly burdensome and not narrowly tailored to lead to the discovery of admissible evidence because it seeks information about individuals who are without knowledge or information relevant to the Complaint or Plaintiff's claims. Moreover, Defendant objects to the request to the extent it compromises confidentiality and violates the privacy rights of individuals who are not parties to the Complaint and are without knowledge or information relevant to the Complaint or Plaintiff's claims. Defendant further objects to the request to the extent it is vague and ambiguous with regards to the terms "work schedules," "schedule," and "finalized." Subject to and without waiving these objections, see Plaintiff's Aloha Shift Detail Records (CMG/6977 – 000015 to 000018).

[Def.'s Ex. C at 19, ECF No. 91-3.] This answer did not comply with Rule 34(b)(2)(C). Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). Specifically, it did not inform plaintiff's counsel that Chipotle possessed responsive information concerning the "work schedule[]" at issue in this case, but was not producing it based on any of the asserted objections. Therefore, plaintiff's counsel had no way of knowing that the MenuLink Data existed, but was not being produced. Plaintiff's counsel, however, did not raise Chipotle's failure to comply with Rule 34(b)(2)(C) through a deficiency letter, or otherwise.

Ms. Ramirez-Cruz also submitted the following interrogatory concerning work schedules at the Cottage Grove location:

> 21. Identify the manner in which employee works schedules at the Chipotle location at Cottage Grove are created and stored.
>
> RESPONSE: Defendant incorporates its general objections as if fully stated herein, and further objects to the Interrogatory as vague and ambiguous with regards to the terms "created," "stored," and "manner." Defendant further objects to the Interrogatory as requiring a narrative better suited for deposition. Subject to and without waiving these objections, *Defendant does not maintain schedules in its regular course of business.*

[Def.'s Ex. C at 14, ECF No. 91-3 (emphasis added).] This answer entirely omitted that the MenuLink program was used to create work schedules at the Cottage Grove location, which would have tipped off plaintiff's counsel that MenuLink Data might exist. Again, however, plaintiff's counsel did not raise any issue with the inadequacy of Chipotle's written response.

Rather than starting a discussion with opposing counsel about the written discovery responses that may have uncovered the existence of the MenuLink Data, Ms. Ramirez-Cruz's attorneys pursued other avenues of discovery. On November 17, 2016, plaintiff's counsel took the deposition of Omar Cortes, a former Chipotle

employee who worked at the Cottage Grove location.[8] During Mr. Cortes's deposition, Mr. Fishman (plaintiff's counsel) and Ms. Guesno and Ms. Wolcott (defense counsel) had an extended discussion concerning production of the schedule. Because that colloquy forms the basis of the harshest criticisms of Chipotle's counsel, the Court reproduces the relevant exchange in full below:

> **MR. FISHMAN**:  Okay. I want a copy [of the schedule].
>
> **MS. GUESNO**:    They don't exist.
>
> **Ms. WOLCOTT**: We told you that.
>
> **MR. FISHMAN**:  You told me, I know it.
>
> **MS. WOLCOTT**: Read the interrogatory responses.
>
> **MS. GUESNO**:    They don't exist. Chipotle has no - -
>
> **MS. WOLCOTT**: They do not maintain - -
>
> **COURT REPORTER**:  One at a time.
>
> **MS. GUESNO**:     schedules.
>
> **MR. FISHMAN**:  Okay.
>
> **MS. GUESNO**:    So as a result, so what happens is, if they had to maintain every schedule for 2,000 stores for some period of years, that would be millions of pages.
>
> **MS. WOLCOTT**: Yeah
>
> **MS. GUESNO**:    And so it is cost prohibitive to maintain those. There's no legal requirement to maintain those, so they are not maintained, so there is no schedule that you're going to get in the case.
>
> **MR. FISHMAN**:  It was a program, wasn't it?
>
> **MS. GUESNO**:    And then not maintained.
>
> **MS. WOLCOTT**: Yeah, and the program doesn't maintain the schedules.

---

[8]    Relevant excerpts of Mr. Cortes' deposition appear in the record at Pl.'s Ex. 8, ECF No. 70, and Def.'s Ex. E at 1-6; ECF No. 91-5. The Court will hereafter refer to these excerpts as "Cortes Dep." by reference to the page and line numbers appearing in the excerpts.

**MR. FISHMAN**: Yet you were able to provide me - -

**MS. WOLCOTT**: Aloha time punches.

**MR. FISHMAN**: Okay.

**MS. WOLCOTT**: That is a different program.

**MS. GUESNO**:    They have to maintain those, Aloha time punches.

**MS. WOLCOTT**: Because that's the FLSA.

**MR. FISHMAN**: We asked you at the beginning of this, and I'm going to go on the record.

**MS. GUESNO**:    This has been on the record the entire time.

**MR. FISHMAN**: Okay. We asked you at the beginning of this litigation to preserve every –

**MS. WOLCOTT**: By the time this you sent this --

**MR. FISHMAN**: Let me make my objection, because this is --

**MS. WOLCOTT**: -- literally the week after, those records are not maintained.

**MS. GUESNO**:    You can pursue [s]poliation --

**MR. FISHMAN**: Okay.

**MS. GUESNO**:    -- and you will not get it because there is no requirement to maintain these schedules. Chipotle complies with the law, and there are business reasons why it's not possible for them to maintain these without incurring substantial expense.

**MR. FISHMAN**: Okay.

**MS. WOLCOTT**: These were not maintained prior to this suit being brought.

**MS. GUESNO**:    They're never maintained.

**MS. WOLCOTT**: They are never maintained.  We told you that also in the interrogatory responses.

**MR. FISHMAN**: Yeah, which you've told, well, we won't be argumentative, other than I'll say that I've asked you to preserve these records.

**MS. WOLCOTT**: When?

**MR. FISHMAN**: Prior to even filing the lawsuit. Let me say my objection. I'm asking the witness today if they were entered into a

manual computer that does exist, you know, at Cottage Grove. The witness has stated that my client's name was on this schedule, 16th, 17th, and 18th, and I've asked for this schedule, and counsel have told me that the schedule is not maintained, and I will not be able to get it off a computer by meta properties or whether or not the computer program has been scrubbed, and that is the representation you're --

**MS. WOLCOTT**: I object. That is not what we said.

**MS. GUESNO**:    It's not scrubbed.

**MR. FISHMAN**:  It's just not maintained.

**MS. GUESNO**:    The data that's maintained is not accurate data, so we can't produce you something that we know is inaccurate, so you can file whatever you need to file, we can litigate this, if you would like to litigate it, and we can explain everything in greater detail, but this witness does not know the ins and outs of maintaining this program and how it's kept.

[Cortes Dep. 33:17-37:15.] Although the initial part of this colloquy includes troubling obfuscation by counsel for Chipotle, Ms. Guesno's final statement clearly admits that there is in fact "data that's maintained." She also stated her position that she cannot produce something that she knows is inaccurate. This is precisely the type of statement that a party is supposed to provide when it is withholding information responsive to a Rule 34 request for production based on an objection. But despite being put on very clear notice through this discussion of the importance of the MenuLink Data by Mr. Fishman, Chipotle did not supplement its response to the request for production. Likewise, being now clearly alerted that MenuLink Data existed, Mr. Fishman should have begun the meet and confer process with Ms. Guesno and Ms. Wolcott, followed by filing a motion to compel, if necessary. He did not.

Instead, on January 19, 2017, Mr. Fishman contacted the attorney who represented the plaintiff in the *Garcia-Hernandez* case against Chipotle in the District of Columbia and learned that Chipotle introduced "schedules" during the trial in that case. [Pl.'s Ex. 9, ECF No. 70.] Six days later, this Court held a settlement conference

at which the undersigned expressed concerns with Chipotle's handling of the MenuLink Data. [*See* ECF No. 90 at 11.]

On February 6, 2017, Mr. Fishman at last sent defense counsel a deficiency letter addressing the interrogatory response and document request identified above. [Pl.'s Ex. 11, ECF No. 70.] In that letter, Mr. Fishman stated that the answer to the interrogatory was incomplete, asked Ms. Guesno and Ms. Wolcott to confirm that the paper schedule was disposed of at the end of the relevant work week, and to confirm that "there is no existing computer back-up of Plaintiff's posted work schedule." [*Id.*] With respect to the document request, Mr. Fishman stated:

> We have asked for Plaintiff's work schedules. We will now be satisfied if you can produce any version of Plaintiff's posted work or shift schedule for April 2015 at the Cottage Grove store. If other workers are listed on her work shift schedule, we will agree to a protective order.

[*Id.*]

On February 10, 2017, Ms. Wolcott responded to Mr. Fishman's letter. Her response states:

> 4.  It is Defendant's counsels' understanding that the hardcopy schedules that are physically posted in the restaurant are disposed of at the end of the scheduled week. It is also Defendant's counsels' understanding that MenuLink, the computer program used to make the weekly schedules, does not maintain accurate representations of the schedules that are physically posted in the restaurant.

> 5.  Defendant will produce schedules for April 2015 by February 17, 2017.

[Pl.'s Ex. 12, ECF No. 70.] As a result of this correspondence, on February 10, 2017, Mr. Fishman knew that Ms. Ramirez-Cruz would be soon getting the information from the computer program that pertained to the "work schedules" he asked for in discovery and that the paper schedule could no longer be produced. On February 15, 2017, two days before they were due to arrive, plaintiff's counsel nonetheless filed the motion for spoliation sanctions.

On February 17, 2017, Chipotle at last provided copies of the MenuLink Data. The documents provided indicate that Ms. Ramirez-Cruz was not scheduled to work for April 16-18, 2015, though Chipotle persisted in its claim that the information is incorrect. [Pl.'s Exs. 13-14, ECF No. 70.] Defense counsel offered to allow Mr. Fishman to take a deposition of a Chipotle corporate representative who could provide testimony about the MenuLink program and clarify why Chipotle takes the position the MenuLink Data is inaccurate. Mr. Fishman rejected Chipotle's offer. Instead, he told Ms. Guesno and Ms. Wolcott that if Chipotle did not accept Ms. Ramirez-Cruz's settlement demand, then he would pursue a motion for sanctions against them personally and against their law firm, Messner Reeves. [Guesno Decl. ¶ 11, Ex. 7 at 3, ECF No. 89.] Defense counsel declined the demand, noting that they could not advise their clients to accept such a demand while maintaining their ethical duties. Ms. Ramirez-Cruz's second motion for sanctions followed.

### B. Sanctions Requested

Ms. Ramirez-Cruz seeks sanctions against Chipotle and its counsel pursuant to Fed. R. Civ. P. 37(c), Rule 26(g), and 28 U.S.C. § 1927 for failure to produce the MenuLink Data and then allegedly misrepresenting whether the information existed. [Pl.'s Mem. in Supp. of Pl.'s 2nd Mot. ("Pl.'s 2nd Mem."), ECF No. 71.]

#### 1. 28 U.S.C. § 1927

Ms. Ramirez-Cruz seeks sanctions against defense counsel personally, and against their law firm, pursuant to 28 U.S.C. § 1927. The gist of this sanctions request is the accusation that Ms. Guesno and Ms. Wolcott vexatiously multiplied the proceedings by filing a discovery response in bad faith and then making misrepresentations during the deposition of Mr. Cortes to conceal the existence of the MenuLink Data. Although Chipotle's handling of discovery on this issue leaves much to be desired, Ms. Ramirez-Cruz cannot satisfy § 1927's high bar..

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to

satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Sanctions under § 1927 are only proper when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Jahnke v. R.J. Ryan Const., Inc.*, No. 13-cv-962 (JRT/SER, 2014 WL 4639831, at *10 (D. Minn. Sept. 16, 2014) (quoting *Lee v. First Lenders Ins. Servs.*, Inc., 236 F.3d 443, 445 (8th Cir. 2001)). "Because section 1927 is penal in nature, it should be strictly construed so that it does not 'dampen the legitimate zeal of an attorney in representing his client.'" *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999) (quoting *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416 (5th Cir. 1994)).

Chipotle's response to the request for production of work schedules did not comply with Rule 34, as explained in greater detail below. However, there is no showing here that defense counsel took the position that they did for an improper purpose or interposed any objection in bad faith. Ms. Ramirez-Cruz argues that because information from the MenuLink program was produced in other cases against Chipotle, defense counsel must have had an improper purpose for withholding them here. [Pl.'s 2nd Mem. at 11-12.] However, Ms. Guesno has explained that the circumstances involved in the other cases identified by Ms. Ramirez-Cruz are different than those present here. [Guesno Decl. ¶¶ 14-15.] Chipotle's position that the MenuLink Data was not discoverable was erroneous, but that does not mean that defense counsel took that position to multiply the proceedings or for an improper purpose.

Ms. Ramirez-Cruzalso asserts that Ms. Guesno and Ms. Wolcott "misl[ed] opposing counsel about the existence of [the MenuLink Data]" throughout the litigation, and specifically argues that their statements during Mr. Cortes' deposition in November 2016 amount to "fraud" and "deception."[9] [Pl.'s 2nd Mem. 18.]

---

[9]    At the hearing, counsel for Ms. Ramirez-Cruz offered no instances of alleged misleading aside from the discovery responses and the deposition discussion.

Ms. Ramirez-Cruz's argument that defense counsel made misrepresentations, misled, or deliberately deceived plaintiff's counsel is belied by the record. During the discussion at Mr. Cortes' deposition, defense counsel's statements indicated the paper schedule posted in the restaurant could no longer be produced because it was thrown away at the end of the week of April 12-18, 2015. In addition, though it took a while, Ms. Guesno ultimately informed Mr. Fishman that it was her understanding that Chipotle's computer program maintains data that is "inaccurate" and it was defense counsel's position that the "inaccurate" data could not be produced. It is possible, even likely, that Mr. Fishman did not immediately recognize that Ms. Guesno had finally informed him that the program used to create the schedule actually maintains data. However, the transcript reveals that is indeed what occurred. What happened at Mr. Cortes' deposition is not a basis to sanction defense counsel pursuant to § 1927.

Even if Chipotle and its attorneys' position and withholding of the MenuLink Data was not substantially justified, this does not mean that defense counsel's conduct was vexatious or so unreasonable that sanctions under § 1927 would be justified. *See Books Are Fun, Ltd. v. Rosebrough*, 239 F.R.D. 532, 548-50 (S.D. Iowa 2007) (distinguishing Eighth Circuit cases upholding § 1927 sanctions and stating that "the conduct undertaken by the [law firm] representing [the defendant] during discovery, while resistant and aggressive and seemingly unduly so, does not reach that required to warrant imposition of sanction under section 1927"). Defense counsel took a position in discovery with which the Court disagrees, but construing § 1927 strictly, their conduct was not vexatious and did not multiply the proceedings for an improper purpose.

## 2. Federal Rule of Civil Procedure 37(c)(1)

Ms. Ramirez-Cruz also seeks sanctions under Federal Rule of Civil Procedure 37(c)(1). As this Rule makes plain, a prerequisite to imposition of the sanctions authorized by its terms is a failure to provide information or identify a witness as required by Rule 26(a) (governing initial disclosures) or Rule 26(e) (governing supplementation of disclosures and discovery responses). Fed. R. Civ. P. 37(c)(1).

### a. Chipotle's Mishandling of Discovery

Ms. Ramirez-Cruz's first argument is easily rejected. She asserts that Chipotle failed to comply with Rule 26(a)(1)(A)(ii) by failing to produce the MenuLink Data with its initial disclosures and by failing to supplement those disclosures pursuant to Rule 26(e). [Pl.'s 2nd Mem. at 8-12.] Rule 26(a)(1)(A)(ii) requires a party to initially disclose electronically stored information in its possession, custody, or control, which it may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii). "This Rule does not require a party to produce every document in its possession, but rather those that the party anticipates it will use to support its claims or defenses." *Macon v. Cedarcroft Health Servs., Inc.*, No. 4:12-cv-1481 CAS, 2013 WL 1352052, at *1 (E.D. Mo. Apr. 2, 2013). However, because Chipotle was never going to use the MenuLink Data in support of its defenses, disclosure was not required under Rule 26(a)(1) and supplementation was not required under Rule 26(e).[10]

Sanctions under Rule 37(c)(1) are also possible where a party fails to supplement responses to discovery requests to correct the information provided. Rule 26(e) requires a party to supplement or correct a response to an interrogatory or request for production in a timely manner if the party learns that the response is "in some material respect . . . incomplete or incorrect, and if the corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). Ms. Ramirez-Cruz argues that Chipotle should have produced the MenuLink Data in response to her request for production of weekly schedules. [*See* Pl.'s 2nd Mem. at 17 ("Even if counsel for Defendant had a good faith belief that they would never use the schedule to support their claims or defenses, they should have disclosed the schedule after it was specifically requested by the Plaintiff's Request for Document Production on July 26, 2016.").] Though she

---

[10]    Ms. Ramirez-Cruz also argues that Chipotle's counsel should be sanctioned under Rule 26(g)(1)(A) because "they should not have certified that the [Rule 26(a)(1)] disclosures were complete when they knowingly omitted the Plaintiff's shift schedules from discovery." [Pl.'s 2nd Mem. 19-20.] Because there was no requirement for Chipotle to provide the MenuLink Data in the initial disclosures, the Court finds that sanctions cannot be imposed under Rule 26(g).

raises this argument only in the context of her argument concerning 28 U.S.C. § 1927, the Court agrees. The Court further finds that Chipotle should have supplemented its response to the request for production of weekly schedules to produce the MenuLink Data, but Chipotle failed to do so.

For several reasons, Chipotle's response to the request for production of "work schedules" was problematic. First, the MenuLink Data contains information about the Cottage Grove location's work schedule for the specific week at issue, and as such, it was both responsive to the discovery request and discoverable. The Court does not credit Chipotle's suggestion that it was justified in withholding the information because the relevant document request did not "encompass[]" the MenuLink Data. [ECF No. 88 at 11.] The document request asked for copies of all employee work schedules at the Cottage Grove Chipotle location. This request did not limit itself to "the actual posted schedules that no longer existed," as Chipotle contends. [*See id.*] Nor would the Court credit an argument that counsel for Ms. Ramirez-Cruz would have to correctly name the MenuLink program in order to be entitled to its data.

Second, Chipotle did not produce the MenuLink Data and asserted several objections, but the written response to the discovery request failed to state "whether any responsive materials [were] being withheld on the basis of [any of the] objection[s]" that Chipotle raised. *See* Fed. R. Civ. P. 34(b)(2)(C) (explaining requirements for raising objections to document requests).[11] Had the September 2016 response stated that Chipotle was withholding the MenuLink Data, explaining that

---

[11]     The producing party does not have to provide a detailed description or log of all the documents withheld, but must "alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection." Fed. R. Civ. P. 34(b)(2)(C), advisory committee note, 2015 Amendment; *see also Liguria Foods, Inc. v. Griffith Labs., Inc.*, No. 14-cv-3041-MWB, 2017 WL 976626, at *11 (N.D. Iowa Mar. 13, 2017) (explaining that failure to comply with the Rule leaves the requesting party unclear whether responsive documents are being withheld); *Sagness v. Duplechin*, No. 4:16-cv-3152, 2017 WL 1183988, at *2 (D. Neb. Mar. 29, 2017) (overruling objections where plaintiff did not identify whether she was withholding responsive documents).

counsel believed it could not produce information that was "inaccurate," Mr. Fishman would have been alerted to the issue. He could have begun the meet and confer process and sought the discovery through a motion to compel if counsel could not resolve the issue without court intervention. Unfortunately, Chipotle's response deprived plaintiff's counsel of that opportunity for nearly two months.[12] The burden is not on the requesting party to guess, in an informational vacuum, that the responding party has responsive information and is refusing to produce it. Rather, the burden is on the responding party to tell the requesting party what it is withholding and why.

Finally, the Court also cannot endorse the argument, which Chipotle thankfully appears to have now abandoned, that it did not have to produce the MenuLink Data in response to the request because the information it contained was "inaccurate." Accepting such an explanation would allow a responding party to withhold production of information simply because the document contradicts the responding party's position on an issue about which the litigants disagree. The adversary process has its boundaries, and Chipotle's position here hues too closely to that boundary for the Court to condone. It is precisely this erroneous interpretation of its discovery obligations that likely led Chipotle to fail to turn over the evidence for so long.

After the November 17, 2016 deposition of Omar Cortes, Chipotle's counsel certainly knew that Ms. Ramirez-Cruz sought not only the paper schedule that had long since been destroyed, but also the electronically stored information that Chipotle possessed. It should have been apparent, at that time, that the written response to the document request was therefore incomplete or incorrect, and they should have supplemented the response shortly thereafter. Alternatively, they should have

---

[12] Though Chipotle points out that during Mr. Cortes's deposition Ms. Guesno and Ms. Wolcott "expressly informed Plaintiff's counsel of the existence of the [MenuLink Data] and the basis for withholding it," [ECF No. 88 at 1-2], the written response did neither.

supplemented the response to the document request after the issue arose once again at the January 25, 2017 settlement conference, but did not do so then.

The Court finds that Chipotle's approach to the discovery obligations imposed by the Federal Rules of Civil Procedure was not substantially justified, and ordinarily, this would warrant the imposition of sanctions. The failure to supplement discovery responses as required by Rule 26(e) allows the Court to "order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). However, no such sanction is appropriate here.[13]

### b. Ms. Ramirez-Cruz's Mishandling of Discovery Violations

After careful review, the Court determines that the expense caused by Chipotle's failure to supplement was as much the product of plaintiff's counsel's unreasonable actions as it was caused by the defense's failure to comply with its discovery obligations. Therefore, sanctions are not appropriate.

At least after Mr. Cortes' deposition, plaintiff's counsel was armed with enough information to begin the meet and confer process with Ms. Guesno and Ms. Wolcott. Having read the transcript of that deposition, it is difficult to understand why

---

[13]    To the extent Ms. Ramirez Cruz seeks an evidentiary sanction or any of the sanctions permitted by Rule 37(b)(2)(A)(i)-(vi), the Court finds those sanctions inappropriate. Rule 37(c)(1) allows the entry of a sanction prohibiting a party from later using information that it fails to provide as required by Rule 26(e). However, prohibiting introduction of the MenuLink Data would not actually punish Chipotle because it does not intend to rely on the information in any way. Indeed the information helps Ms. Ramirez-Cruz tell her version of the story—that she was not on the schedule. Moreover, dispositive and evidentiary sanctions available under Rule 37(b)(2)(A)(i)-(vi) would not be appropriate because resolution of cases according to their merits is preferred in federal court. *Lael v. Six Flags Theme Parks, Inc.*, No. 4:13-cv-01226–SPM, 2014 WL 4092261, at *5 (E.D. Mo. Aug. 15, 2014) ("'There is a preference in the federal system that trials be determined on the merits' and not on constructions of the Federal Rules of Civil Procedure that operate to unnecessarily deprive a party of its right to have a merits-based determination of a claim.") (quoting *Talbert v. City of Chicago*, 236 F.R.D. 415, 419 (N.D. Ill. 2006)).

plaintiff's counsel did not send defense counsel a deficiency letter the next day. Up until that point, Chipotle's answer to the request for production of work schedules had perhaps left plaintiff's counsel in the dark, but the same cannot be said after the November 17, 2016 deposition. Mr. Fishman could easily have told Ms. Guesno and Ms. Wolcott in a letter that he did not agree that they could withhold the "data that's maintained" by the program used to make the schedules because it is "inaccurate." If Chipotle had stood by its position in response to such a letter, and Mr. Fishman had made a motion to compel discovery, he would have almost certainly prevailed and would have been entitled to recover his expenses incurred in making the motion, including attorney's fees, given that Chipotle's position was not substantially justified. *See* Fed. R. Civ. P. 37(a)(5). That such an approach would likely have resolved the issues with the MenuLink Data is demonstrated by what actually happened once plaintiff's counsel finally sent a deficiency letter: Chipotle agreed to produce the MenuLink Data.

After the November 17, 2016 deposition, instead of promptly following up with defense counsel, plaintiff's counsel waited two months to take any action at all, and even then, did not raise the issue with Chipotle's attorneys. Rather, in mid-January 2017, plaintiff's counsel decided to investigate the circumstances of other litigation against Chipotle. Taking that action may have made sense if plaintiff's counsel had already begun the meet and confer process and had been stonewalled by Ms. Guesno and Ms. Wolcott, but investigating unrelated cases was an unreasonable choice given that plaintiff's counsel made no attempt to meet and confer *in this case* to get to the bottom of what happened *here*.

What took place after counsel began that investigation into unrelated litigation sheds some light on what was likely behind plaintiff's counsel's approach. Plaintiff's counsel filed an unsupported motion for spoliation sanctions relating to the paper schedule and the Development Journal, both of which had been destroyed prior to Chipotle receiving any notice of Ms. Ramirez-Cruz's claim and there is not even a colorable showing that the documents were destroyed with the desire to suppress the

truth. Then, after defense counsel said it would produce the MenuLink Data and offered to allow additional discovery to let plaintiff's counsel explore why Chipotle believes it is inaccurate, plaintiff's counsel refused that offer. Instead, counsel for Ms. Ramirez-Cruz used the threat of a motion for sanctions against Ms. Guesno and Ms. Wolcott to force Chipotle to take a more favorable view of settlement. This was also not a reasonable course of action. It suggests that plaintiff's counsel was seeking to obtain a windfall rather than obtain relevant information and reimbursement for unnecessary expense. At that point, although Chipotle's counsel may have been initially at fault, plaintiff's counsel helped himself to an equal portion fo the blame for unnecessarily multiplying litigation. The Court will not reward that approach by imposing sanctions on defense counsel or their client. Accordingly, the Court finds that no sanctions are justified under Rule 37(c)(1).[14]

## RECOMMENDATION

For the reasons discussed above, the Court makes the following recommendations.

1. Plaintiff's Motion For Sanctions Based On Spoliation Of Evidence **[ECF No. 43]** should be **DENIED**.

2. Plaintiff's Motions For: Sanctions Against Defendant Pursuant To Fed. R. Civ. P. 37(c)(1); Sanctions Against Counsel For Defendant Pursuant To 26(g); Sanctions Against Counsel For Defendant Pursuant To 28 U.S.C. § 1927 **[ECF No. 69]** should be **DENIED**.

Date: May 11, 2017                     _s/Katherine Menendez_____
                                       Katherine Menendez
                                       United States Magistrate Judge

---

[14]    Nevertheless, the Court finds that if the parties can agree to conduct the Rule 30(b)(6) deposition Chipotle offered to the plaintiff without altering the timing of the summary-judgment briefing and argument currently pending before the District Court, it would be efficient for that deposition to take place as soon as possible and on the same terms as proposed by Chipotle.

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.