# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Maria Ramirez-Cruz,

        Plaintiff,

      v.

Chipotle Services, LLC,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 15-4514 ADM/KMM

_____

Rachel Petersen, Esq., Rachel Petersen Law Office, Minneapolis, MN, and Phillip F. Fishman, Esq., Phillip Fishman Law Office, Minneapolis, MN, on behalf of Plaintiff.

Brenna L. Wolcott, Esq., and Jacqueline R. Guesno, Esq., Messner Reeves LLP, Denver, CO, and Kathleen M. Brennan, Esq., McGrann Shea Carnival Straughn & Lamb, Chartered, Minneapolis, MN, on behalf of Defendant.

Jeffrey R. Mulder, Esq., Bassford Remele, PA, Minneapolis, MN, on behalf of Messner Reeves LLP, Jacqueline R. Guesno, Esq., and Brenna L. Wolcott, Esq.

_____

## I. INTRODUCTION

On May 25, 2017, the undersigned United States District Court Judge heard oral argument on Defendant Chipotle Services, LLC's ("Chipotle") Motion for Summary Judgment [Docket No. 94]. Also before the Court is Plaintiff Maria Ramirez-Cruz's ("Ramirez-Cruz") Objection [Docket No. 125] to Magistrate Judge Katherine M. Menendez's May 11, 2017 Report and Recommendation [Docket No. 123] ("R&R") recommending that Ramirez-Cruz's Motion for Sanctions Based on Spoliation of Evidence [Docket No. 43] and Second Motion for Sanctions [Docket No. 69] be denied. For the reasons set forth below, Chipotle's Motion for Summary Judgment is granted in part and denied in part and Ramirez-Cruz's Objection is overruled.

## II. BACKGROUND

### A. Summary Judgment

On August 27, 2014, Ramirez-Cruz started working as a crew member at Chipotle's location in Blaine, Minnesota. See Pl.'s Ex. 1 [Docket No. 101].[1] Shortly thereafter, Ramirez-Cruz began a romantic relationship with her co-worker, Jesus Gutierrez ("Gutierrez"). Pl.'s Ex. 2. [Docket No. 116]; Def.'s Exs. [Docket No. 96] Ex. F (collectively, "Ramirez-Cruz Dep.") 30:25–31:8. In December 2014, Ramirez-Cruz learned she was pregnant with Gutierrez's child. Id. at 31:15–18.

Ramirez-Cruz and Gutierrez transferred to a new Chipotle location in Cottage Grove, Minnesota. Id. 46:3–5. Ramirez-Cruz's first day at that location was January 10, 2015. Id. 47:22–24. Omar Renteria ("Renteria") was the store's General Manager. Def.'s Exs. Ex. A ("Smiley Decl.") ¶ 16. Heather Nicole Garbe ("Garbe") acted as General Manager when Renteria was on leave between March 18 and April 28, 2015. Id. at Ex. D. The General Manager is responsible for creating the weekly work schedule. Smiley Decl. ¶ 15.

On her first day of work at the new location, Ramirez-Cruz suffered injuries falling off a step stool. Ramirez-Cruz Dep. 56:12–17. Omar Cortes ("Cortes") and Jackie Ventura ("Ventura"), who were the store's Service Managers, came to Ramirez-Cruz's assistance. Id. 56:22–24; Smiley Decl. ¶ 12. In completing paperwork for a Worker's Compensation claim,

---

[1] Local Rule 7.1(l) provides that "exhibits must be accompanied by an index - either in the form of a supporting affidavit or of a separate title page - that identifies the exhibits." The exhibits supporting Ramirez-Cruz's Memorandum in Opposition [Docket No. 100] are individually filed as separate docket entries and do not include an index that identifies the exhibits. In the future, counsel for Ramirez-Cruz should file exhibits and other supporting documentation as exhibits to an affidavit or declaration as one docket entry, with the affidavit or declaration setting forth the contents of the attached materials.

Ramirez-Cruz disclosed she was pregnant, which she believes first alerted Chipotle of her condition. When Ramirez-Cruz returned to work two days later, she avers that she was medically restricted from lifting heavy items. Ramirez-Cruz Dep. 76:1–7.

### 1. Allegations of Discrimination

#### a. Pregnancy-Related Discrimination

Ramirez-Cruz claims that despite her lifting restriction, Chipotle required her to lift heavy objects. Ramirez-Cruz also contends that Joshua Moua, who became Kitchen Manager on April 6, 2015, actually made her lift more than non-pregnant employees. Id. 263:3–7. Ramirez-Cruz avers that although she was frequently able to find another employee to assist with lifting, often other employees were either unavailable or refused to help. Id. 76:8–24.

Ramirez-Cruz also alleges Chipotle discriminated against her on account of her pregnancy by refusing to provide maternity pants and by not allowing her to chew gum to alleviate morning sickness. Ramirez-Cruz contends that she was unable to comply with Chipotle's dress policy because Chipotle refused to order maternity pants for her from Chipotle's website. Id. 137:6–20. Ramirez-Cruz also claims that on one occasion she was singled out for chewing gum while at work despite receiving prior permission to do so. Id. 85:11–88:15.

#### b. Reduction in Hours

At the beginning of her employment at the Cottage Grove location, Ramirez-Cruz worked a consistent Monday through Friday schedule, mornings and nights. Id. 47:3–12. In March, her schedule changed to Monday through Wednesday. Id. The parties dispute why her schedule was changed. Although Ramirez-Cruz contends the change was to accommodate her pregnancy-related sickness, she claims the change was not voluntary. Id. 47:3–12. Chipotle

asserts Ramirez-Cruz requested the change to accommodate her changing child care arrangements. Id. 323:15–22.

### c. Removal from the Schedule and Eventual Termination

On April 16, 2015, Gutierrez was fired. Id. 158:15–17. When Cortes made a social visit to Ramirez-Cruz and Gutierrez's home shortly thereafter, Ramirez-Cruz allegedly made comments such as, "why should I go back, when they fired my man" and "I'll make them suffer."[1] Def.'s Exs. Ex. N ("Cortes Dep.") 72:12–19. Cortes informed the other store managers that he did not believe Ramirez-Cruz wanted to work at Chipotle anymore. Id. at Ex. H 21:21–23.

On Sunday, April 19, 2015, Ramirez-Cruz called Garbe to ask when she was scheduled to work. Ramirez-Cruz Dep. 169:8–9. Ramirez-Cruz claims Garbe said "I assumed since we fired [Gutierrez], we were going to take you off the schedule because we assumed that you weren't going to come back." Id. 169:9–12. Ramirez-Cruz replied that Gutierrez's termination had nothing to do with her and that she wanted to be put back on the schedule. Id. 169:13–15. Since Garbe had already made the schedule for the remainder of April, she offered to put Ramirez-Cruz back on the schedule beginning in May. Id. 169:15–19.

Gutierrez claims to have overheard a phone conversation between Garbe and Ramirez-Cruz. Def.'s Exs. Ex. M 33:3–13. During that conversation, Gutierrez claims Garbe told Ramirez-Cruz that she would try to shift hours from other employees so Ramirez-Cruz could get back on the schedule sooner. Id. Gutierrez also claimed to have overheard Garbe direct

---

[1] Ramirez-Cruz, Gutierrez, and Cortes were friends and spent time together outside of work. Cortes Dep. 19:13–17.

Ramirez-Cruz to keep calling the store and request to be put back on the schedule to return to work. Id. 33:23–34:4. Ramirez-Cruz alleges that she followed Garbe's directions, but her phone calls to the store either went unanswered or unreturned. Ramirez-Cruz Dep. 187:8–13. Ramirez-Cruz also alleges that she spoke with Renteria and Cortes about returning to work.[2] Id. 176:14–22; 191:20–192:8.

According to Chipotle, phone records do not show any phone calls from Ramirez-Cruz to the store until June 30, over two and a half months after Gutierrez's termination. See Def.'s Exs. Ex. S (showing phone records for the Cottage Grove Chipotle). Renteria and Cortes each claim that Ramirez-Cruz never spoke with them about getting back on the work schedule. Id. at Ex. I ("Renteria Dep.") 72:8–13; Cortes Dep. 18:13–21. And Garbe claims that she sent Ramirez-Cruz a text message on April 19, but she never received a response. Id. at Ex. L ¶¶ 6–8. Ramirez-Cruz admits she stopped trying to contact Garbe after April 19 because she believed Garbe "had something against" her. Ramirez-Cruz Dep. 170:7–12.

The parties do agree that after Gutierrez was fired Ramirez-Cruz never returned to work at Chipotle. In a May 8, 2015 employment application for a different employer, Ramirez-Cruz stated that her employment with Chipotle ended in April 2015. Def.'s Exs. Ex. U. On May 18, 2015, Chipotle removed Ramirez-Cruz from their employment system. Renteria Dep. 37:9–17.

**2. Legal Theory**

On March 17, 2016, Ramirez-Cruz filed a Second Amended Complaint [Docket No. 26] asserting a single count of sex discrimination under the Minnesota Human Rights Act

---

[2] At this time, Renteria was on leave and Cortes was assisting Garbe in creating the work schedule. Cortes Dep. 21:9–13.

("MHRA"), Minn. Stat. §§ 363A.04, subd. 43 and 363A.08, subd. 2. Ramirez-Cruz alleges that her removal from the schedule was based solely upon "sexist assumptions regarding the behavior of women without any regard to the Plaintiff's actual ability or willingness to perform her job. Specifically, [Chipotle] assumed that the Plaintiff would choose not to work anymore upon the termination of her boyfriend from the same store." Second Am. Compl. ¶ 19.

Chipotle moves for summary judgment.

## B. Report and Recommendation[2]

Until the summary judgment motion, Chipotle asserted that Ramirez-Cruz's removal from the schedule was due to her failure to show up for her scheduled shifts on April 16, 17, and 18, 2015. Ramirez-Cruz disputed that she was scheduled to work those days and sought production of her work schedule to support her position. Ramirez-Cruz also sought production of her "Development Journal," a document purportedly maintained by Chipotle that shows employee progress and performance reviews.[3]

Throughout most of discovery, Chipotle claimed that the paper work schedule was destroyed and electronic schedule data did not exist. Only belatedly did Chipotle reverse course and produce an electronic schedule, claiming that it initially withheld production because it was inaccurate. Pl.'s Exs. [Docket No. 70] at Ex. 12. As to the Development Journal, Chipotle never

---

[2] Since neither party argues that Judge Menendez incorrectly described the events relevant to the two sanctions motions, the factual background for this section is adopted from the R&R.

[3] The parties previously disputed the relevance of Ramirez-Cruz's performance on her discrimination claim. Since Chipotle is not now arguing that any of Ramirez-Cruz's claimed adverse employment actions were taken as a result of poor work performance, any remaining dispute concerning her work performance is immaterial to these motions.

produced any such document, claiming it never existed or, if it did, it was no longer available. Def.'s Exs. [Docket No. 91] at Ex. B ¶¶ 5, 10.

Ramirez-Cruz filed two separate motions for sanctions. The First Motion for Sanctions [Docket No. 43] seeks spoliation sanctions against Chipotle for the alleged failure to preserve the paper schedule and Development Journal. The Second Motion for Sanctions [Docket No. 69] seeks sanctions against Chipotle's counsel for Chipotle's counsels' conduct relating to the untimely disclosure of the electronic schedule.

Regarding the first sanctions motion, the parties agree that the paper schedule and the Development Journal were destroyed pursuant to Chipotle's document retention policies; the schedule is discarded at the end of each week and the Development Journal, if it existed, would have been destroyed at the end of September 2015. Ramirez-Cruz argues that Chipotle had a duty to preserve the paper schedule and Development Journal and suggests that the failure to preserve the documents supports an inference of bad faith.

The background concerning the electronic schedule is more complicated. In Ramirez-Cruz's initial written discovery requests, she requested broad production of employee work schedules. Pl.'s Exs. at Ex. 4. Chipotle responded with objections that did not disclose that electronic schedule information existed but was being withheld pursuant to a specific objection. Id. at Ex. 5. Chipotle's answer to an interrogatory request asking how work schedules are created and stored was similarly imprecise, failing to mention that a computer program called MenuLink was used to create work schedules.

At the November 17, 2016 deposition of Cortes, counsel for both parties had an extended discussion concerning production of the work schedule. Although Chipotle's counsel began by

maintaining that no electronic scheduling data existed, counsel eventually disclosed that schedule data did exist but that it was inaccurate. Cortes Dep. 33:17–37:15.

On January 19, 2017, over two months later, counsel for Ramirez-Cruz learned from an attorney litigating a case against Chipotle in the District of Columbia, that Chipotle had introduced employee work schedules into evidence during trial. On February 6, 2017, Ramirez-Cruz sent Chipotle a deficiency letter addressing its discovery responses to Ramirez-Cruz's requests for her work schedule. Chipotle responded on February 10:

> It is Defendant's counsels' understanding that the hardcopy schedules that are physically posted in the restaurant are disposed of at the end of the scheduled week. It is also Defendant's counsels' understanding that MenuLink, the computer program used to make the weekly schedules, does not maintain accurate representations of the schedules that are physically posted in the restaurant.

Pl.'s Exs. at Ex. 12. Chipotle promised to produce the April 2015 computer created schedule by February 17, 2017. Id.

On February 15, 2017, two days prior to Chipotle's self-imposed deadline to turn over the electronic work schedules, Ramirez-Cruz filed the Motion for spoliation sanctions. On February 28, 2017, Ramirez-Cruz filed the second sanctions Motion.

Chipotle did produce the electronic schedule information on February 17, 2017. This information shows that Ramirez-Cruz was not scheduled to work April 16, 17, or 18. Chipotle maintains that this information is not accurate. Chipotle offered Ramirez-Cruz the opportunity to depose a corporate representative who would provide testimony about the accuracy of the MenuLink data. Guesno Decl. [Docket No. 89] at Ex. 6. Ramirez-Cruz declined Chipotle's offer. Id. at Ex. 7.

In the R&R, Judge Menendez recommends denying both sanctions Motions. Regarding the first Motion, Judge Menendez determined that the documents were destroyed pursuant to company policy well before Ramirez-Cruz's initial request on December 2, 2015, and that no duty to preserve those items arose before that date. As to the second Motion, although seriously concerned by the obstructionist behavior displayed by Chipotle, Judge Menendez concluded that sanctions against counsel were inappropriate. With respect to sanctions under 28 U.S.C. § 1927, Judge Menendez reasoned that Chipotle's counsels' behavior, while leaving "much to be desired," did not meet the high bar required to impose sanctions. And although "Chipotle's approach to the discovery obligations imposed by the Federal Rules of Civil Procedure was not substantially justified, and ordinarily . . . would warrant the imposition of sanctions," Judge Menendez concluded that sanctions were inappropriate under Federal Rule of Civil Procedure 37(c)(1) because counsel to Ramirez-Cruz were also culpable in unnecessarily multiplying litigation.

Ramirez-Cruz objects to Judge Menendez's recommendations.

## III. DISCUSSION

### A. Summary Judgment

#### 1. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials

but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate. Id. However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted). "[S]ummary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." Krenik, 47 F.3d at 959.

### 2. Discrimination Under the Minnesota Human Rights Act

The MHRA makes it unlawful for an employer to discharge an employee because of the employee's sex. Minn. Stat. § 363A.08, subd. 2. The term "sex" is defined to include pregnancy. Minn. Stat. § 363A.03, subd. 42.

In analyzing sex discrimination claims under the MHRA, courts "apply the principles developed in the adjudication of claims under Title VII because of the substantial similarities between the two statutes." Hanenburg v. Principal Mut. Life Ins. Co., 118 F.3d 570, 574 (8th Cir. 1997); see also Bahr v. Capella Univ., 788 N.W.2d 76, 83 (Minn. 2010) ("[W]e have said that in construing the MHRA, we apply law developed in federal cases arising under Title VII of the 1964 Civil Rights Act.") (quotations omitted). Under Title VII, a plaintiff may substantiate claims of discrimination through either direct or indirect evidence. Fjelsta v. Zogg Dermatology, PLC, 488 F.3d 804, 809 (8th Cir. 2007).

### a. Direct Evidence

Ramirez-Cruz argues that the assumption that she would no longer want to work for Chiptole after Gutierrez was fired is direct evidence of sex discrimination. Ramirez-Cruz contends Garbe's assumption is rooted in a perverse stereotype about a woman's role in the workforce. Chipotle responds that there is no link between a discriminatory animus and any adverse employment action. Chipotle also argues that Garbe's assumption was facially neutral and was not premised upon a discriminatory stereotype.

Under the direct evidence approach, Ramirez-Cruz must "produce[ ] direct evidence of conduct or statements by persons involved in the decision-making process, which indicate a discriminatory attitude was more likely than not a motivating factor in the employer's decision." Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1045–46 (8th Cir. 2005) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989)). Direct evidence is evidence that "must be strong enough to show a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employment decision." Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 965 (8th Cir. 2006) (quotation marks omitted). "Thus, 'direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence." Torgerson v. City of Rochester, 643 F.3d 1031, 1044 (8th Cir. 2011).

"'[D]irect evidence' does not include 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.'" Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 635 (8th Cir. 1998) (quoting Price Waterhouse, 490 U.S. at 277). In sex discrimination cases, direct evidence

"might include proof of an admission that gender was the reason for an action, discriminatory references to the particular employee in a work context, or stated hostility to women being in the workplace at all."  Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1017 (8th Cir. 1999).  Direct evidence cases are rare, but they do exist.  See, e.g., Simmons v. New Pub. Sch. Dist. No. Eight, 251 F.3d 1210, 1214 (8th Cir. 2001) (decisionmaker's comments that "a woman can't handle [the female plaintiff]'s job" and that the plaintiff was "a woman in a man's job" were direct evidence of sex discrimination); Kneibert v. Thompson Newspapers, Mich. Inc., 129 F.3d 444, 452 (8th Cir. 1997) (decisionmaker's statements that he "had no use for a senior editor" but needed "three young editors" were direct evidence of age discrimination); EEOC v. Liberal R-II Sch. Dist., 314 F.3d 920, 924–25 (8th Cir. 2002) (remarking that a 70-year-old employee "was too old to drive a bus" was direct evidence of age discrimination).

Ramirez-Cruz's claim of direct evidence is solely premised on Garbe's statement that she assumed Ramirez-Cruz would not want to return to work after Gutierrez was fired.  This is not direct evidence of sex discrimination.  Garbe's statement was facially neutral and did not include any explicit discriminatory references to Ramirez-Cruz's sex or pregnancy.  Without direct evidence of a discriminatory motive, the case must proceed by way of the indirect method of proof.  See Torgerson, 643 F.3d at 1044 ("But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of discrimination through" the indirect method).

### b.  Indirect Evidence

The indirect evidence method of proof follows the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  First, Ramirez-Cruz must establish a

prima facie case of sex discrimination by showing that: 1) she is a member of a protected class; 2) she was qualified to perform her job; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Elam v. Regions Fin. Corp., 601 F.3d 874, 879 (8th Cir. 2010). If a prima facie case is established, the burden shifts to Chipotle "to articulate a non-discriminatory, legitimate justification" for the adverse action. Id. (citation omitted and quotations omitted). If successful, the burden then returns to Ramirez-Cruz to prove that Chipotle's proffered reason for taking the adverse action is pretext for unlawful discrimination. Lewis v. Heartland Inns of Am., L.L.C., 591 F.3d 1033, 1038 (8th Cir. 2010).

### i. Prima Facie Case

Chipotle argues that Ramirez-Cruz cannot establish the third and fourth prongs of her prima facie case—that she suffered an adverse employment action and that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. "Although the burden of establishing a prima facie case . . . is not onerous, the plaintiff must satisfy every element of [her] prima facie case, carrying at all times the ultimate burden of proof and persuasion to establish that the employer discriminated against [her] on an impermissible basis." Grant v. City of Blytheville, Ark., 841 F.3d 767, 773 (8th Cir. 2016) (citation and quotations omitted)..

### 1. Adverse Employment Action

Chipotle contends that Ramirez-Cruz's claimed adverse employment actions are legally insufficient. Ramirez-Cruz argues that her reduction in scheduled work hours and her removal

from the work schedule are both adverse employment actions.[4]

For purposes of the MHRA, "an adverse employment action must include some tangible change in duties or working conditions." Bahr, 788 N.W.2d at 83 (citing Burchett v. Target Corp., 340 F.3d 510, 518 (8th Cir. 2003)). "There must be some material employment disadvantage; minor changes in working conditions are insufficient." Id. (citing Brannum v. Mo. Dep't of Corr., 518 F.3d 542, 549 (8th Cir. 2008)). "Not everything that makes an employee unhappy is an actionable adverse employment action." LaCroix v. Sears, Roebuck, & Co., 240 F.3d 688, 691 (8th Cir. 2001).

### A. Removal From the Work Schedule and Eventual Termination

Chipotle has now come to agree that Ramirez-Cruz should not have been removed from the work schedule immediately following Gutierrez's termination. Chipotle nevertheless argues that the omission of Ramirez-Cruz from the April schedule is not an adverse employment action because it took timely corrective action. Chipotle argues that Ramirez-Cruz thwarted Chipotle's effort at corrective action by failing to follow through with Garbe's direction to call the store and express her desire to return to work. Ramirez-Cruz disagrees and argues that she phoned Garbe, the store, and others to try to get back on the work schedule.

In Jackson v. United Parcel Service, Inc., the Eighth Circuit reaffirmed its prior holding "that a demotion or denial of a promotion, even when accompanied by a loss in pay, is not an

---

[4] Ramirez-Cruz also argues that Chipotle refused to help her lift heavy items, failed to provide maternity pants, and asked her to stop chewing her gum on one occasion. None of these allegations raise an actionable claim of sex discrimination because they do not present a "tangible change in working conditions that produces a material employment disadvantage." Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 926 (8th Cir. 2007).

adverse employment action when it is corrected in a timely manner." 548 F.3d 1137, 1141 (8th Cir. 2008).[5] But Jackson, and the similar corrective action cases, addressed the situation where the adverse employment action was actually corrected. See, e.g., id. (noting that Jackson was reinstated with full back pay and no loss of seniority); Kent v. Iowa, 651 F. Supp. 2d 910, 944 (S.D. Iowa 2009) ("[E]ach Plaintiff received all back pay and benefits lost by virtue of his suspension."); Fair v. Norris, 480 F.3d 865, 870 (8th Cir. 2007) (recognizing that liability may have occurred had employer not taken corrective action "by offering her the position she wanted").

Despite Garbe stating that Ramirez-Cruz would be placed back on the work schedule starting in May, Ramirez-Cruz was never scheduled again. See Def.'s Exs. Ex. D (showing employee schedules). Chipotle blames this on Ramirez-Cruz for failing to follow through with Garbe's directions to her, but Chipotle's argument misses the mark. Chipotle cannot claim it took corrective action when it placed the burden on Ramirez-Cruz to rectify its error. When Ramirez-Cruz clearly stated her desire to return to work after learning that Garbe took her off the schedule—something Chipotle does not dispute here—in order to escape liability for taking timely corrective action Chipotle was required to actually take corrective action itself. Corrective action here required Chipotle to quickly place Ramirez-Cruz back on the schedule. Chipotle already knew that Ramirez-Cruz worked a regular Monday through Wednesday schedule, her availability was not in question and, therefore, there was no need for Ramirez-Cruz

---

[5] While Jackson and the cases it relies upon involved demotions and denials of promotions, the foundation for the corrective action theory is rooted in promoting "the kind of extrajudicial corrective action envisioned by Congress when it passed Title VII." Fair v. Norris, 480 F.3d 865, 870 (8th Cir. 2007). Thus, the reasoning in Jackson is instructive here.

to later telephone Garbe and explain her availability. Ramirez-Cruz Dep. at 47:6–12. Accordingly, Ramirez-Cruz's removal from the work schedule satisfies the adverse employment action prong of her prima facie case.

### B. Reduction in Hours

Ramirez-Cruz argues that her scheduled work hours dropped drastically after she disclosed her pregnancy to Chipotle. Pl.'s Ex. 1. Ramirez-Cruz contends she worked on average over 33 hours per week before she was pregnant, and that after Chipotle learned she was pregnant her weekly average was reduced to under 22 hours. Id. Chipotle responds the reduction in Ramirez-Cruz's weekly hours was in response to Ramirez-Cruz's request to work fewer days to either accommodate pregnancy-related health concerns or because of schedule changes in her child care arrangement. Chipotle also argues that even if Ramirez-Cruz's explanation of why her hours were reduced is credited, the percentage by which her work schedule decreased after she disclosed her pregnancy is not sufficient to amount to a material change in her working conditions.

Although there is no established standard for when a reduction in hours becomes a material change in working conditions constituting an adverse employment action, prior cases provide guidance. In Baucom v. Holiday Cos., the Eighth Circuit concluded that a normal schedule of 43–45 hours per week that was cut to consistently less that 40 hours per week did not constitute an actionable adverse employment action. 428 F.3d 764, 767 (8th Cir. 2005). In Bergstrom-Ek v. Best Oil Co., a greater than fifty percent cut in hours was held to be an adverse employment action. 153 F.3d 851, 859 (8th Cir. 1998). Similarly, in Scamardo v. Scott County Arkansas, a reduction in hours of greater than fifty percent was also found to be an adverse

employment action.  12 F. Supp. 2d 939, 941 (W.D. Ark. 1998), <u>rev'd on other grounds sub nom.</u>

<u>Scamardo v. Scott Cty.</u>, 189 F.3d 707 (8th Cir. 1999).

Prior to Chipotle knowing she was pregnant, Ramirez-Cruz worked an average of 33.51

hours per week.  Pl.'s Ex. 1.  After Chipotle learned that she was pregnant, Ramirez-Cruz

worked an average of 21.84 hours per week, a difference of just over 42%.  <u>Id.</u>  Although the

precise requirements of a prima facie case were "never intended to be rigid, mechanized, or

ritualistic," this is a significant decrease in her hours and may be considered to be a material

change in her working conditions.  <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512 (2002).

### 2.  Inference of Discrimination

The final step in the prima facie case analysis is determining whether the adverse

employment action gives rise to an inference of discrimination.  There is no hard and fast method

for establishing an inference of discrimination at the prima facie stage.  <u>Grant</u>, 841 F.3d at 774.

Approved methods include showing preferential treatment of "similarly-situated employees who

are not in the protected class," "biased comments by a decisionmaker," and "evidence that an

employer failed to follow its own policies or shifted its explanation of the employment decision."

<u>Id.</u> (quotation marks and citations omitted).

### A.  Reduction in Hours

There is no evidence in the record that Ramirez-Cruz's decline in weekly hours gives rise

to an inference of discrimination.  The record reflects that Ramirez-Cruz's hours were reduced,

at least in part, because of illness.  <u>See</u> Ramirez-Cruz Dep. 47:3–12 ("When I wasn't that sick

yet with my pregnancy, I was doing Monday through Friday.  I wouldn't work weekends,

because I did go to church on Sundays, and Saturdays with the kids, so then when I started

getting sick, my usual days were always Mondays, Tuesdays, and Wednesdays."). Additionally, Ramirez-Cruz's disclosure of her pregnancy to Chipotle directly coincides with her transfer from the Blaine store to the Cottage Grove store, which may also be a significant factor in her schedule change.[6]

### B. Removal From the Work Schedule and Eventual Termination

Ramirez-Cruz alleges that Garbe's comment that she assumed Ramirez-Cruz would not want to work at a place that had fired her boyfriend and the father of her unborn child could be interpreted as a biased comment that supports an inference of discrimination. Ramirez-Cruz Dep. at 169:10–19. A reasonable fact finder could infer that a discriminatory motive was behind Chipotle's decision to remove Ramirez-Cruz from the work schedule immediately following Gutierrez's termination. Additionally, as explained more fully below, Chipotle's explanation for taking Ramirez-Cruz off the work schedule has shifted over time, which further supports a finding that the adverse employment action gives rise to an inference of discrimination, satisfying the fourth prong of her prima facie case.

### ii. Non-Discriminatory Reason

The burden now shifts to Chipotle to articulate a "non-discriminatory, legitimate justification for its conduct which rebuts the employee's prima facie case." Elam, 601 F.3d at 879. Chipotle's burden at this step "is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." Floyd v. State of Mo. Dep't of Soc. Servs.,

---

[6] Only 14 weeks were used to establish Ramirez-Cruz's pre- and post-pregnancy averages. With such a small sample size, it is difficult to draw too much significance from the change. See Bergstrom-Ek, 153 F.3d at 854–56 (showing that plaintiff's average number of hours worked per week prior to her pregnancy was calculated over a two year period).

Div. of Family Servs., 188 F.3d 932, 936 (8th Cir. 1999). Moreover, district courts are "not supposed to evaluate the veracity of [Chipotle's] offered reasons." Groves v. Cost Planning & Mgmt. Intern., Inc., 372 F.3d 1008, 1009 (8th Cir. 2004) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)).

Chipotle contends that Ramirez-Cruz's removal from the work schedule and eventual termination was voluntary. Chipotle has presented evidence that Ramirez-Cruz told multiple employees that she no longer wanted to work at Chipotle after Gutierrez was fired. Def.'s Exs. Ex. H at 21:13-22; Cortes Dep. at 72:3–19. This non-discriminatory justification for its conduct returns the burden to Ramirez-Cruz to demonstrate pretext.

### iii. Pretext

Ramirez-Cruz argues that Chipotle's shifting justification for taking her off the work schedule is also evidence of Chipotle's stated reason being a pretext for discrimination. According to Ramirez-Cruz, Chipotle has shifted from its initial position that she was taken off the schedule because she failed to work scheduled shifts. Ramirez-Cruz additionally argues that a reasonable fact finder could conclude that Chipotle's justification for removing her from the work schedule was likely motivated by a discriminatory stereotype that a woman's commitment to her family is superior to that of her employment. Pl.'s Mem. Opp'n Mot. Summ. J. [Docket No. 100] at 19.

This final step of the analysis requires Ramirez-Cruz to "produce evidence sufficient to create a genuine issue of material fact regarding whether [Chipotle's] proffered nondiscriminatory reason is a pretext for discrimination." Doucette v. Morrison Cty., Minn., 763 F.3d 978, 982 (8th Cir. 2014) (citation omitted). To meet this requirement, "[a] plaintiff may

show that the employer's explanation is unworthy of credence . . . because it has no basis in fact. . . . [A] plaintiff may show pretext by persuading the court that a [prohibited] reason more likely motivated the employer." Torgerson, 643 F.3d at 1047 (quotations and citations omitted, alterations in original). The Eighth Circuit has also recognized that a substantial change in an employer's proffered reason for its employment decision can support a finding of pretext. Amini v. City of Minneapolis, 643 F.3d 1068, 1076 (8th Cir. 2011).

## 1. Shifting Justification

"A change in an employer's legitimate, nondiscriminatory reason for firing an employee is probative of pretext only if the discrepancy is 'substantial.'" Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 957 (8th Cir. 2012) (citation omitted).

Chipotle's proffered reason for removing Ramirez-Cruz from the work schedule has substantially changed throughout this litigation. Chipotle initially claimed that Ramirez-Cruz was removed from the work schedule because she missed scheduled shifts. It was not until Chipotle disclosed the MenuLink data, which showed that Ramirez-Cruz was not scheduled to work those days, that Chipotle retreated from this position.[7] Chipotle now asserts that Ramirez-Cruz was removed from the schedule because of a good faith belief that she no longer wanted to work at Chipotle after Gutierrez was fired. Chipotle claims that these two theories are consistent with its belief that Ramirez-Cruz "voluntarily abandoned her employment." Def.'s Am. Mem.

---

[7] Chipotle represents that the MenuLink data is not an accurate reflection of whether Ramirez-Cruz was actually scheduled to work on April 16, 17, or 18. Since Chipotle still contends that Ramirez-Cruz was scheduled to work those days, a point Ramirez-Cruz continues to dispute, a genuine dispute on this issue remains. If a jury credits Ramirez-Cruz's position, it is also evidence of pretext because it suggests that Chipotle's initial justification for taking her off the schedule lacked factual support.

Supp. [Docket No. 122] at 28.

Chipotle's present justification, however, relies upon alleged statements Ramirez-Cruz made to Cortes immediately following Gutierrez's termination, such as "why should I go back, when they fired my man?" Cortes Dep. 72:10–19. Chipotle now contends that these statements, rather than missed shifts, motivated Chipotle not to schedule Ramirez-Cruz after Gutierrez was fired. An employee who misses scheduled shifts presents a quite different context than an employee who verbalizes frustration and anger that her boyfriend was fired. The two situations pose substantially different reasons for believing that an employee has abandoned their employment.[8] Chipotle's proffered reason for its employment decision to remove Ramirez-Cruz from the schedule has substantially changed over time.

### 2. Motivated by Discrimination

Ramirez-Cruz also argues that a reasonable fact finder could conclude that Garbe's assumption was motivated by a discriminatory stereotype about women in the workplace. Chipotle argues to the contrary, that any assumption Garbe made about Ramirez-Cruz's desire to continue working was nondiscriminatory.

Women have been historically stereotyped as less committed to their employment than men. See Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 736 (2003) ("These mutually reinforcing stereotypes created a self-fulfilling cycle of discrimination that forced women to continue to assume the role of primary family caregiver, and fostered employers' stereotypical views about women's commitment to work and their value as employees.") The legislative

---

[8] It is also notable that Ramirez-Cruz's alleged comments do not clearly articulate her firm intention to quit. Saying "why should I go back" is not the same as saying "I will not go back."

intent in enacting the MHRA was to promote a public policy "fostering the employment of all individuals in this state in accordance with their fullest capacities . . . and to safeguard their rights to obtain and hold employment without discrimination." Ridler v. Olivia Pub. Sch. Sys. No. 653, 432 N.W.2d 777, 781 (Minn. Ct. App. 1988) (citation omitted). Likewise, when Congress enacted Title VII, the legislature intended to "strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." Id. (quoting Sprogis v. United Air Lines, Inc., 444 F.2d 1194, 1198 (7th Cir. 1971), cert. denied, 404 U.S. 950 (1971)).

In this case, a reasonable juror could conclude that Garbe's employment decision about Ramirez-Cruz was rooted in her belief that Ramirez-Cruz would be more committed to her family than her job and she would not want to continue working for the company that just fired her boyfriend and father of her unborn child. Further, a reasonable juror could conclude that a discriminatory stereotype based upon Ramirez-Cruz's sex or pregnancy was the true reason Ramirez-Cruz was taken off the work schedule. Therefore, there is sufficient evidence in the record to create a genuine issue of material fact regarding whether Chipotle's proffered nondiscriminatory reason was a pretext for discrimination. Chipotle's Motion for Summary Judgment is denied.

**B. Punitive Damages**

Chipotle argues that Ramirez-Cruz's claim for punitive damages must be dismissed because she cannot establish that Chipotle acted with deliberate disregard for the rights or safety of others. Chipotle also argues that punitive damages are inappropriate because Ramirez-Cruz cannot demonstrate actual or compensable damages, which must be established before punitive damages may be awarded. Ramirez-Cruz responds that Chipotle's action of removing her from

the work schedule while she was pregnant constitutes a deliberate disregard for her rights and that she suffered damages as a result.

Under the MHRA, punitive damages of not more than $25,000 may be awarded. Minn. Stat. §363A.29, subd. 4. To recover such damages, Ramirez-Cruz must establish "upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, subd. 1(a)(b); Minn. Stat. § 363A.29, subd. 4 (stating that punitive damages under the MHRA "shall be awarded pursuant to section 549.20").

There is a genuine dispute as to whether Chipotle discriminated against Ramirez-Cruz because of her sex or pregnancy. This genuine dispute is evinced by Chipotle's shifting explanation as to why Ramirez-Cruz was removed from the schedule, as well as Garbe's statement that she assumed Ramirez-Cruz would not want to continue working after Gutierrez was fired. This evidence may be indicative of discriminatory stereotypes attributed to women that are pervasive in the workplace, and provide a basis for a reasonable juror to conclude that Chipotle discriminate against Ramirez-Cruz. While probative of possible discrimination, the evidence does not, however, clearly and convincingly reflect that Chipotle was acting with deliberate disregard for the rights or safety of Ramirez-Cruz. Ramirez-Cruz's punitive damages claim is therefore dismissed.

## C. Objection to the R&R

Ramirez-Cruz objects to Judge Menendez's R&R recommending that sanctions not be imposed for Chipotle's failure to preserve a paper work schedule and Development Journal, and for Chipotle's failure to timely supplement its discovery responses concerning the MenuLink data.

**1. Standard of Review**

The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential.  See Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999).  The district court must affirm a decision by a magistrate judge on a nondispositive issue unless the decision is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).  A decision is "'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir. 1996).  "A decision is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" Knutson v. Blue Cross & Blue Shield of Minn., 254 F.R.D. 553, 556 (D. Minn. 2008) (quoting Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co., 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)).

**2. First Motion for Sanctions**:  **Paper Work Schedule and Development Journal**

In her Objection, Ramirez-Cruz does not articulate specifically which portion of Judge Menendez's analysis concerning spoliation is clearly erroneous or contrary to law.  Instead, Ramirez-Cruz recasts her argument that EEOC rules obligated Chipotle to preserve the documents at issue, an argument that was presented to and rejected by Judge Menendez.  Since Ramirez-Cruz has neither identified a flaw in Judge Menendez's legal reasoning nor cited record evidence showing that Judge Menendez's conclusion was clearly erroneous, her Objection pertaining to the First Motion for Sanctions is overruled.

**3. Second Motion for Sanctions:  Electronic Work Schedule**

Ramirez-Cruz's also objects to Judge Menendez's recommendation to deny sanctions due

to Chipotle's failure to timely produce and later supplement the electronic schedule information. Ramirez-Cruz argues Chipotle's counsels' conduct warrants sanctions under either Federal Rule of Civil Procedure 37 or 28 U.S.C. § 1927.

### a. 28 U.S.C. § 1927

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The statute "is concerned only with limiting the abuse of court processes" by providing a remedy to those who suffer dilatory and vexatious action. Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980). But "[b]ecause section 1927 is penal in nature, it should be strictly construed so that it does not 'dampen the legitimate zeal of an attorney in representing [a] client.'" Lee v. L.B. Sales, Inc., 177 F.3d 714, 718 (8th Cir. 1999) (quoting Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1313, 1316 (5th Cir. 1994)). Sanctions under § 1927 are proper if "attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." Lee v. First Lenders Ins. Servs., Inc., 236 F.3d 443, 445 (8th Cir. 2001) (quotation marks omitted); see also Books Are Fun, Ltd. v. Rosebrough, 239 F.R.D. 532, 543–44 (S.D. Iowa 2007) (discussing change in Circuit law pertaining to § 1927).

Chipotle's conduct during discovery was objectionable and failed to provide or put Ramirez-Cruz on notice about a critical piece of evidence, the electronic work schedule, that was germane to Chipotle's now abandoned defense. Although Chipotle's counsel did not fulfill their discovery obligations, the record does not reflect that Chipotle's counsels' delay in producing

the electronic schedule was a product of unreasonable or vexatious conduct that was in reckless or intentional disregard of their duties to the Court. Accordingly, Judge Menendez's recommendation not to impose sanctions under § 1927 is neither clearly erroneous nor contrary to law.

### b. Federal Rule of Civil Procedure 37(c)(1)

Federal Rule of Civil Procedure 26(e)(1)(A) requires a party to timely supplement or correct responses to interrogatories or requests for production if the party learns that the response is "in some material respect . . . incomplete or incorrect, and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Failure to promptly and properly supplement deficient discovery responses may lead to sanctions under Federal Rule of Civil Procedure 37(c)(1).[9]

The record reflects that Ramirez-Cruz requested broad production of work schedule information, a request that certainly included any electronic schedule data that Chipotle had in its possession. Rather than disclose the MenuLink data or articulate a valid objection to justify withholding production, Chipotle chose a third option, asserting general objections that failed to put Ramirez-Cruz on notice that electronic scheduling information existed. It was not until November 17, 2016, while taking the deposition of Cortes, that Ramirez-Cruz learned that electronic schedule data might be available. Judge Menendez accurately criticized Chipotle's counsel for failing to supplement their discovery responses promptly after Cortes' deposition.

---

[9] Judge Menendez rejected Ramirez-Cruz's argument that sanctions were warranted under Federal Rule of Civil Procedure 26(g) based on Chipotle's certification that its Rule 26(a)(1) disclosures were complete when they failed to include Ramirez-Cruz's shift schedules. Nothing in Ramirez-Cruz's Objection persuades the Court that this conclusion was clearly erroneous or contrary to law.

She also correctly observed that "Chipotle's approach to the discovery obligations imposed by the Federal Rules of Civil Procedure was not substantially justified, and ordinarily, this would warrant the imposition of sanctions." R&R at 27.

However, it was not clearly erroneous or contrary to law for Judge Menendez to depart from the ordinary and decline to impose sanctions here. After Cortes' November 17, 2016 deposition, Ramirez-Cruz waited until February 6, 2017 to notify Chipotle of the deficiency in failing to produce the electronic scheduling data. In the interim, rather than engaging with counsel in this case, Ramirez-Cruz contacted an attorney in the District of Columbia litigating a different case against Chipotle to probe what type of scheduling information had been introduced there. Ramirez-Cruz explains that she took this approach rather than initiating a meet and confer because "[t]here is nothing in the conduct of Defendant and it's [sic] counsel to support this hope of civility." Obj. at 5. While this may have been true, past performance does not guarantee future conduct. Abandoning an opportunity to reach an agreement based upon the assumption that any effort to do so would be fruitless is not a proper foundation upon which to impose sanctions. To countenance Ramirez-Cruz's argument ignores the role Ramirez-Cruz played in delaying the disclosure of the electronic schedule data. Under these circumstances, Judge Menendez's decision to not award sanctions was neither clearly erroneous or contrary to law.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.    Defendant Chipotle Services, LLC's Motion for Summary Judgment [Docket No. 94] is **GRANTED IN PART and DENIED IN PART** as follows:  The punitive damages claim in Ramirez-Cruz's Second Amended Complaint [Docket No. 26] is DISMISSED.  In all other respects, the Motion is DENIED.

2.    Plaintiff Maria Ramirez-Cruz's Objection [Docket No. 125] to Magistrate Judge Katherine M. Menendez's May 11, 2017 Report and Recommendation [Docket No. 123] is **OVERRULED**;

3.    The Report and Recommendation is **ADOPTED**;

4.    Plaintiff's First Motion for Sanctions [Docket No. 43] is **DENIED**; and

5.    Plaintiff's Second Motion for Sanctions [Docket No. 69] is **DENIED**.

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 10, 2017.